BILLY JOE BURROW v. WESTINGHOUSE ELECTRIC CORP. AND WESTING-
HOUSE TRANSPORT LEASING CORPORATION

No. 8721SC359

(Filed 5 January 1988)

1. **Master and Servant § 10.2— workers' compensation—retaliatory discharge—
   summary judgment inappropriate**

   Summary judgment should not have been granted on plaintiff's claim for
   wrongful discharge arising from his workers' compensation claim where the
   evidence revealed factual disputes as to whether plaintiff was discharged and,
   if so, as to defendant's motive in discharging him. N.C.G.S. § 97-6.1.

2. **Master and Servant § 10.2— workers' compensation—retaliatory discharge—
   statutory defenses not available**

   In a wrongful discharge action arising from plaintiff's workers' compensa-
   tion claim, the statutory defenses of N.C.G.S. § 97-6.1(c) and (e) did not apply
   and summary judgment for defendants was inappropriate where all of the
   evidence showed that plaintiff's failure to meet work standards was due to the
   injury which was the subject of plaintiff's workers' compensation claim and his
   desire to seek medical attention for it; similarly, defendants failed to establish
   that plaintiff's permanent partial disability interfered with his ability to per-
   form work available.

3. **Master and Servant § 10.2— wrongful discharge—failure to perform an unsafe
   act—summary judgment for defendant proper**

   The trial court did not err in an action for wrongful discharge by granting
   summary judgment for defendants on plaintiff's claim that he had been wrong-
   fully discharged for refusing to drive under unsafe conditions. Plaintiff has no
   cause of action for discharge for failure to perform an act which he may be
   able to prove was unsafe; *Sides v. Duke University,* 74 N.C. App. 331, was
   based on the employer's willful violation of clearly expressed public policy.

4. **Master and Servant § 10.2— wrongful discharge—failure to drive when physi-
   cal condition impaired—summary judgment for defendants**

   There was no authority for and the court did not adopt plaintiff's argu-
   ment that violation of a federal regulation creates an exception to the employ-
   ment at will doctrine in North Carolina.

APPEAL by plaintiff from *Morgan, Judge,* and *Collier, Judge.*
Orders filed 12 December 1986 and 20 January 1987 in Superior
Court, FORSYTH County. Heard in the Court of Appeals 22 Oc-
tober 1987.

This is an action for retaliatory discharge, brought pursuant
to G.S. 97-6.1. The following facts are uncontradicted. Beginning
in 1982, defendants employed plaintiff as a tractor-trailer driver

operating out of their terminal in High Point. In early 1985, plaintiff injured his left leg and hip in a work related accident. In May 1985, plaintiff attempted to return to work with a doctor's release, restricting him to tasks not requiring heavy lifting or climbing. Mr. Richard McNabb, the terminal's operations manager, told plaintiff that company policy required that, when he came back to work, he must come without restrictions. Approximately one month later, plaintiff returned to work with an unrestricted release. Plaintiff has sustained a ten to fifteen percent (10-15%) permanent partial disability in his left leg and reached maximum medical improvement in August 1985. Pursuant to an agreement with defendants, plaintiff received workers' compensation benefits and continued to receive follow-up medical attention.

When plaintiff returned to work in June 1985, he was assigned a route to California. He had asked to be assigned to what he perceived were less difficult routes to allow himself to fully recover. After the California trip, plaintiff complained to Mr. McNabb that he had experienced some pain in his leg and again asked to be assigned to easier routes. Thereafter, plaintiff was assigned two routes to the northeast. On the second of these, plaintiff's leg became swollen and painful. At one of his stops in Pennsylvania, plaintiff called his doctor, who told him to come in for further attention as soon as possible. Although he was scheduled to drive to Buffalo, New York, plaintiff called the High Point terminal and talked with the dispatcher. Plaintiff explained his situation and asked if he could exchange routes with another driver so he could return to North Carolina. Plaintiff was told he could not exchange routes and, that if he left his truck there and came back to North Carolina, the company would consider that he had quit. Plaintiff flew back to North Carolina the next day. When he returned to defendants' terminal, he was asked to turn in his keys and company credit cards.

On 4 February 1986, plaintiff filed this action, claiming, in part, that he was discharged in retaliation for pursuing his workers' compensation remedies. He also alleged, as a separate claim for relief, that he was discharged because he raised concerns over the safety of continuing his route and that his discharge was, therefore, wrongful and against public policy. On 12 November 1986, defendants moved for summary judgment on all claims. By order entered 12 December 1986, Judge Morgan grant-

ed defendant's motion as to the retaliatory discharge claim, allowing plaintiff to amend his complaint and submit additional materials on his second claim for relief. On 20 January 1987, after considering the additional materials submitted by the parties, Judge Collier granted summary judgment for defendants on the wrongful discharge claim.

*Rabil & Rabil, by S. Mark Rabil, for the plaintiff-appellant.*

*Womble, Carlyle, Sandridge & Rice, by Guy F. Driver, Jr., M. Ann Anderson, and C. Daniel Barrett, for the defendant-appellees.*

EAGLES, Judge.

I

[1] Plaintiff's first claim for relief is based on G.S. 97-6.1, which reads, in relevant part, as follows:

(a) No employer may discharge or demote any employee because the employee has instituted or caused to be instituted, in good faith, any proceeding under the North Carolina Workers' Compensation Act, or has testified or is about to testify in any such proceeding.

(b) Any employer who violates any provision of this section shall be liable in a civil action for reasonable damages suffered by an employee as a result of the violation, and an employee discharged or demoted in violation of this section shall be entitled to be reinstated to his former position. The burden of proof shall be upon the employee.

To recover under the statute, the plaintiff must show: (1) discharge or demotion, (2) caused by good faith institution of workers' compensation proceedings, or testimony or anticipated testimony, in those proceedings. *Hull v. Floyd S. Pike Electrical Contractor*, 64 N.C. App. 379, 307 S.E. 2d 404 (1983). Plaintiff argues the trial court erred in granting summary judgment for defendant on his claim of retaliatory discharge. We agree.

Summary judgment should only be granted where the evidence presented to the trial court shows that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. *Bank v. Gillespie*, 291 N.C. 303, 230 S.E. 2d

375 (1976); G.S. 1A-1, Rule 56(c). The movant's materials must be closely scrutinized while the non-movants must be indulgently regarded. *Hillman v. United States Liability Ins. Co.*, 59 N.C. App. 145, 296 S.E. 2d 302 (1982), *disc. rev. denied*, 307 N.C. 468 (1983). Defendants contend they are entitled to summary judgment because there is no genuine issue of material fact as to (1) plaintiff's discharge, (2) its motive in discharging plaintiff, assuming he was discharged, and (3) the existence of certain affirmative defenses found in subsections (c) and (e) of the statute. The evidence presented to the trial court, however, precludes summary judgment on any of those grounds.

The evidence undoubtedly reveals a factual dispute on whether plaintiff was discharged. Defendants showed that it was company and industry practice to consider that drivers who left their trucks on the route had quit their job. Moreover, plaintiff was told that in his conversation with the dispatcher on 14 August 1985. Merely because an employer considers an employee as having quit his job, however, does not necessarily make it so, even if the employer had such a policy or practice and the employee knew about it. The proper inquiry in determining whether he was discharged is whether the employee voluntarily left his position, not whether he chose to do an act for which he knew his employer would fire him. Plaintiff's materials showed that he did not want to lose his job; that he told the dispatcher he was not quitting but merely returning to North Carolina to see his doctor about his recurring pain; and that, when he returned to the terminal, Mr. Doyle Vaughn, defendants' terminal manager, asked plaintiff to turn in his keys and credit cards. This is sufficient to establish a genuine issue of material fact regarding whether defendant was discharged.

Assuming *arguendo* that plaintiff was discharged, there is also a genuine issue of material fact as to defendants' motive in discharging plaintiff. Mr. McNabb's and Mr. Vaughn's depositions indicate that the only reason plaintiff was fired, again assuming he was fired, was that he violated company work rules by leaving his truck in Pennsylvania and returning home without it. In plaintiff's deposition testimony, however, there is enough evidence of a retaliatory motive to make summary judgment on that basis inappropriate.

Plaintiff testified that both Mr. McNabb and Mr. Vaughn told him several times after he returned from the California trip and when he complained about his leg, that he should get another job if his injury prevented him from driving. Plaintiff also testified that he felt like he was assigned the California trip to "get rid of" him and that he was sent on the trips to the northeastern United States to "test [him] out." Plaintiff also testified that, during his medical treatment, he missed several doctor's appointments because "they kept me out—when they knew that I had an appointment." In addition, plaintiff's evidence that the dispatcher refused to assign him the easier routes, that easier routes may have been available for assignment to him, and that his fellow drivers did not see why plaintiff could not have those easier routes, is further evidence that defendants' motive was retaliatory.

Plaintiff's evidence showing defendants had a retaliatory motive is all circumstantial. Moreover, defendants' materials attempt to refute much of it. However, motive, like intent or other states of mind, is rarely susceptible to direct proof and almost always depends on inferences drawn from circumstantial evidence. *See* Brandis, North Carolina Evidence, section 83 (1982). Consequently, summary judgment should rarely be granted in those cases. *See Bank v. Belk*, 41 N.C. App. 328, 255 S.E. 2d 430, *disc. rev. denied*, 298 N.C. 293, 259 S.E. 2d 299 (1979). Furthermore, where matters of the credibility and weight of the evidence exist, summary judgment ordinarily should be denied. *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 251 S.E. 2d 419 (1979). The weight and credibility of both defendants' and plaintiff's evidence, must be determined by the finder of fact.

[2] Finally, defendants contend the summary judgment may be sustained due to the existence of certain statutory defenses set out in G.S. 97-6.1(c) and (e). We disagree.

Defendants rely on G.S. 97-6.1(c) and (e):

(c) Any employer shall have as an affirmative defense to this section the following: . . . failure to meet employer work standards not related to the Workers' Compensation Claim. . . .

(e) The failure of an employer to continue to employ, either in employment or at the employee's previous level of

employment, an employee who receives compensation for permanent total disability, or a permanent partial disability *interfering with his ability to adequately perform work available*, shall in no manner be deemed a violation of this section. [Emphasis added.]

Initially the parties dispute the effect of subsections (c) and (e) on proof of the employer's motive under subsection (a). Plaintiff argues that the employer's motive in discharging or demoting the employee is relevant even if the employer can show it has a defense under subsection (c) or (e). Defendants argue that once the employer shows it has a subsection (c) or (e) defense, inquiry into the employer's motive becomes irrelevant. Under defendants' analysis, once a defense is established, even if a plaintiff could prove that his employer fired him for pursuing his remedies under the Workers' Compensation Act, the employer would nevertheless receive judgment. Both parties cite language from *Johnson v. Builder's Transport, Inc.*, 79 N.C. App. 721, 340 S.E. 2d 515 (1986), in support of their position. We need not, however, address that question since, even assuming that defendants' analysis is correct, summary judgment was improperly granted.

All of the evidence shows that any failure to meet defendants' work standards was due to the injury which was the subject of plaintiff's workers' compensation claim and his desire to seek medical attention for it. Therefore, the failure to meet work standards is related to his workers' compensation claim and not within the purview of subsection (c).

Similarly, under subsection (e), defendants have failed to establish that plaintiff's permanent partial disability interfered with his ability to perform work available. It is undisputed that plaintiff sustained a permanent partial disability in his left leg. Prior to the statute's amendment in 1985, proof of this fact alone would have established a defense. *See Bridgers v. Whiteville Apparel Corp.*, 71 N.C. App. 800, 323 S.E. 2d 50 (1984). The 1985 amendment, however, added a requirement that the disability interfere with the employee's ability to perform available work. *See* 1985 N.C. Sess. Laws, chapter 653, section 1. Subsection (e) now requires a causal link between the disability and the ability to perform available work. Here, the evidence establishes a causal link only between the injury and the failure to perform. Plaintiff

produced sufficient evidence from the two employers he has worked for since leaving defendants' employ to show that his permanent partial disability does not interfere with his ability to adequately perform work substantially identical to work he was employed to do for defendants. In addition, as we have already noted, there is some evidence that at the time in question defendant had easier work available which plaintiff might have been able to perform without the trouble he experienced on his assigned routes to California and the northeast. Defendants failed to present a sufficient forecast of evidence to sustain summary judgment based on either G.S. 97-6.1(c) or (e).

## II

[3] Plaintiff also contends the trial court erred in granting summary judgment for defendants on his second claim for relief. His complaint alleged that defendants wrongfully discharged him for refusing to drive under unsafe conditions. Citing *Sides v. Duke University*, 74 N.C. App. 331, 328 S.E. 2d 818, *disc. rev. denied*, 314 N.C. 331, 333 S.E. 2d 490 (1985), plaintiff argues his second claim for relief states a legally recognized cause of action on which there are genuine issues of material fact for trial. We disagree.

In *Sides*, this court created an exception to the common law employment "at will" doctrine. *Sides* held that a cause of action existed for "wrongful discharge" of an employee at will who was fired in retaliation for her refusal to give false or incomplete testimony in a medical malpractice case. In *Walker v. Westinghouse Electric Corp.*, 77 N.C. App. 253, 335 S.E. 2d 79 (1985), however, this court declined to establish a general cause of action for wrongful discharge of an employee fired for raising safety concerns related to his employment. Instead, we held without deciding whether such a cause of action existed, that the plaintiff in *Walker* had failed to present a sufficient forecast of evidence to justify denial of the defendant's motion for summary judgment.

Like *Walker*, even assuming plaintiff's complaint here states a cause of action, defendants are nevertheless entitled to summary judgment. An essential element of plaintiff's claim, as alleged, would be that defendants' discharge of plaintiff was motivated by plaintiff's raising safety concerns. While there is sufficient circumstantial evidence to show a genuine issue of

material fact on defendants' motive under G.S. 97-6.1, we find nothing in the record to indicate that defendants' motive was that plaintiff raised "safety concerns" about his employment.

In fact, plaintiff's allegations for wrongful discharge do not rest on his having raised safety concerns, but rather on his failure to do an unsafe act. We hold that plaintiff has no cause of action for discharge from failure to perform an act which he may be able to prove was unsafe. Our decision in *Sides v. Duke University, supra,* was based on the employer's willful violation of clearly expressed public policy. To allow an action for "wrongful discharge" where the employer's discharge of the employee was for a failure to perform an "unsafe" act is entirely different. As we noted in *Walker v. Westinghouse Electric Corp., supra,* "some jobs are by their very nature dangerous." *Id.* at 263, 335 S.E. 2d at 86. Holding that every discharge for failure to perform an allegedly unsafe task is actionable, would create a prolific and unwarranted source of trouble in the workplace. The kind of overriding policy concerns present in *Sides* are simply not present here.

[4] Plaintiff has also raised, for the first time on appeal, the argument that a federal regulation prohibits defendants from firing him for his refusal to drive when his physical condition was so impaired. *See* 49 C.F.R., section 392.3 (1986) and 49 U.S.C.A., section 2305 (Supp. 1987). Plaintiff contends that defendants failed to comply with the regulation and therefore, under *Hogan v. Forsyth County Country Club Co.,* 79 N.C. App. 483, 340 S.E. 2d 116, *disc. rev. denied,* 317 N.C. 334, 346 S.E. 2d 140-141 (1986), defendants are liable for wrongful discharge. In *Hogan,* the court explained *Sides* as recognizing an exception to the employment at will doctrine in favor of an employee who is discharged in retaliation for (1) his refusal to do an act prohibited by law, or (2) his performing an act required by law. *Hogan* at 498, 340 S.E. 2d at 126. Therefore, even assuming that the issue is properly before us, we find no authority for, and decline to adopt, plaintiff's argument that violation of a federal regulation creates an exception to the employment at will doctrine in North Carolina.

Reversed in part, affirmed in part.

Judges MARTIN and PARKER concur.

Judge MARTIN concurred in this opinion prior to 31 December 1987.