EVELENA MORRISON THOMPSON, Administratrix of the Estate of FREDERICK THOMPSON, deceased, Plaintiff v. THE THREE GUYS FURNITURE COMPANY, CHARLES HILLIARD GREENE, d/b/a THE THREE GUYS FURNITURE COMPANY and/or FRANKLIN PLACE, CHARLES HILLIARD GREENE, individually and TERRY PAUL RAY, Defendants

No. COA95-444

(Filed 7 May 1996)

**1. Automobiles and Other Vehicles § 700 (NCI4th)— fatal collision—truck driven by one other than owner—agency of driver at time of collision—summary judgment improper**

In an action to recover for the death of plaintiff's intestate who was killed when a truck, owned by one defendant and driven by the other defendant to whom the truck had been entrusted for painting, crossed the center line and struck intestate's vehicle head-on, summary judgment was improper as to plaintiff's allegations, based on N.C.G.S. § 20-71.1, that defendant owner was vicariously liable for defendant driver's negligence because he was acting as the owner's agent at the time of the accident, since plaintiff submitted affidavits in addition to the *prima facie* showing of agency provided by N.C.G.S. § 20-71.1, and defendant driver's affidavit gave rise to genuine issues of material fact about whether defendant owner gave him a specific time to return the truck and whether, at the time of the collision, he was in the course of his duties as the owner's agent.

**Am Jur 2d, Automobiles and Highway Traffic §§ 1085-1087.**

**Presumption and prima facie case as to ownership of vehicle causing highway accident. 27 ALR2d 167.**

**2. Automobiles and Other Vehicles § 440 (NCI4th)— negligent entrustment of vehicle by owner to another—sufficiency of evidence**

The evidence was sufficient to create a genuine issue of material fact as to whether defendant truck owner, through the exercise of due care, should have known that defendant driver was an incompetent or reckless driver and that his operation of the truck might likely cause injury to another where it tended to show that the owner entrusted his truck to a stranger who walked in from the street without asking to see his driver's license, asking about his driving record, or even inquiring from his references about his character, and as a result defendant driver, whose license had been permanently revoked for numerous driving violations including driving while impaired, drove defendant owner's truck while under the influence of alcohol, crossed the center line, and struck plaintiff's intestate's automobile, resulting in his death.

**Am Jur 2d, Automobiles and Highway Traffic §§ 643, 645.**

**3. Automobiles and Other Vehicles § 441 (NCI4th)— authorizing driver with no license to use vehicle—no negligence per se—knowledge required**

There was no merit to plaintiff's contention that violation of N.C.G.S. § 20-34 and negligence *per se* are established when it is shown only that defendants "authorized" defendant driver to drive the truck when he had no license, since the statute makes it unlawful for one to permit or authorize a motor vehicle owned by him or under his control to be driven by a person only when he *knows* the driver has no legal right to do so or is otherwise driving the vehicle in violation of any of the provisions of the Uniform Driver's License Act.

**Am Jur 2d, Automobiles and Highway Traffic § 645.**

Appeal by plaintiff from order entered 20 December 1994 by Judge Robert M. Burroughs in Mecklenburg County Superior Court. Heard in the Court of Appeals 30 January 1996.

Plaintiff administratrix brought this action seeking damages for the wrongful death of her son, alleging that his death had been caused by negligence on the part of defendant Ray and that Ray's negligence was imputed to defendant Three Guys Furniture Company (TGF) and

its sole proprietor, defendant Greene. By her complaint and amended complaint, plaintiff also alleged that defendant Greene had negligently entrusted the company's 1980 Chevrolet truck to Ray and had violated G.S. § 20-34, constituting negligence *per se.*

Defendants Greene and TGF answered, denying any negligence on their part and further denying liability for any negligent conduct of Ray. Following discovery, Greene and TGF moved for summary judgment.

The materials before the trial court tended to show that on 29 May 1992, Frederick Thompson was killed when defendant Ray drove a truck, owned by and registered to defendant TGF, across the center line and struck Thompson's automobile head-on. Ray's blood alcohol level was later tested to be .17. Ray's driver's license had been permanently revoked on 13 June 1991 for violations including: driving while impaired, driving on the wrong side of the road, reckless driving, unsafe movement, a moving violation involving personal injury or property damage over $300.00, and for multiple offenses of driving while his license was revoked.

Defendants' evidence tended to show that defendant Greene had first met Ray on 15 April 1992 when Ray came to the TGF store and offered to paint the company truck for $700.00. Ray left a telephone number with Greene, and Greene told Ray he would let him know if he was interested. Ray returned to the store a month later, on a Friday, and, after some negotiation, Greene and Ray agreed that Ray would paint the truck for $550.00 and that Ray would pick the truck up on the following Monday, 18 May 1992, and return it by Thursday, 21 May 1992, because Greene needed to use the truck on that day. According to Greene, Ray appeared clean cut and spoke clearly and intelligently each time they met. Upon Greene's inquiry, Rick Waycaster, another store owner for whom Ray had worked, told Greene that Ray had done a good job for him.

Martha Jean Stegall, an employee of TGF, stated that Greene told her that Ray would paint the truck for $550.00 and would pick up the truck on 18 May and return it by 21 May. When Ray came to pick up the truck on 18 May, he asked for a $250.00 advance to buy supplies and gave Stegall a receipt upon which he wrote that the job was to be finished "within three days." Stegall also stated that she made it clear to Ray that the truck had to be returned by 21 May, and that Ray gave her a phone number where he could be reached.

Ray did not return the truck on 21 May 1992. Greene testified that he tried unsuccessfully to contact Ray at the phone numbers Ray had given, and that he was unable to locate Ray by other means. Greene filed a formal stolen vehicle report on 25 May 1992, and a warrant was issued for Ray's arrest.

Plaintiff's evidence tended to show that Greene knew Ray would be driving the truck, but did not ask to see Ray's driver's license, did not talk to Ray about his driving record, and had never seen Ray driving a car or truck. Greene did not investigate Ray's references other than speaking briefly to Rick Waycaster. Greene described his inquiry to Waycaster as follows: "in passing I asked Mr. Waycaster—you know, looks like he's doing a good job, and he said—he said, yes, and that's about the extent of that. I was more concerned over what I was purchasing [at Waycaster's shop]."

Plaintiff also presented Ray's affidavit in which Ray stated that Greene had personally given him the keys to the truck and knew that he would be driving it, but had not requested to see a driver's license and had not asked any questions about his driving record or the status of his driving privilege. Ray stated that Greene did not give him a specific time to return the truck, and that at the time of the collision he was driving the truck with Greene's permission and for the purpose of getting material to complete the job. Ray also stated that he had given Greene telephone numbers where he could be reached, but from the date he received the truck until the collision, Greene never contacted him and never requested that he return the truck. The charges against Ray for stealing the truck were subsequently dismissed.

The trial court granted summary judgment in favor of defendants Greene and TGF, dismissing all claims against them. Plaintiff appeals.

*Ferguson, Stein, Wallas, Adkins, Gresham and Sumter, by James E. Ferguson, Noell P. Tin, and Anita Hodgkiss, for plaintiff-appellant.*

*Petree Stockton, L.L.P., by David B. Hamilton and Anne E. Essaye, for defendant-appellees.*

MARTIN, John C., Judge.

Plaintiff assigns error to the trial court's order granting summary judgment, contending there are genuine issues of material fact with respect to her claims that defendants Greene and TGF are liable (1)

vicariously for Ray's negligence, (2) for their own negligent entrustment of the truck to Ray, and (3) for their own negligence *per se* in violating G.S. § 20-34. We agree with plaintiff's argument as to her claims based on agency and negligent entrustment and reverse summary judgment as to those claims. However, we affirm summary judgment as to plaintiff's claim based on the alleged statutory violation.

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. Gen. Stat. § 1A-1, Rule 56(c). The moving party has the burden of showing entitlement to summary judgment, *Varner v. Bryan*, 113 N.C. App. 697, 440 S.E.2d 295 (1994), and in ruling upon the motion, a court must consider the evidence in the light most favorable to the non-moving party, who is entitled to the benefit of all favorable inferences which may be drawn from the evidence. *Averitt v. Rozier*, 119 N.C. App. 216, 458 S.E.2d 26 (1995).

I.

[1] Plaintiff first argues that summary judgment was improper as to her allegations that defendants Greene and TGF are vicariously liable for Ray's negligence because he was acting as their agent at the time of the accident. Plaintiff relies on G.S. § 20-71.1, which provides:

(a) In all actions to recover damages for injury to the person or to property or for the death of a person, arising out of an accident or collision involving a motor vehicle, proof of ownership of such motor vehicle at the time of such accident or collision shall be prima facie evidence that said motor vehicle was being operated and used with the authority, consent, and knowledge of the owner in the very transaction out of which said injury or cause of action arose.

(b) Proof of the registration of a motor vehicle in the name of any person, firm, or corporation, shall for the purpose of any such action, be prima facie evidence of ownership and that such motor vehicle was then being operated by and under the control of a person for whose conduct the owner was legally responsible, for the owner's benefit, and within the course and scope of his employment.

The purpose of this statute is "to establish a ready means of proving agency in any case where it is charged that the negligence of a

**THOMPSON v. THREE GUYS FURNITURE CO.**

[122 N.C. App. 340 (1996)]

nonowner operator causes damage to the property or injury to the person of another." *Hartley v. Smith*, 239 N.C. 170, 177, 79 S.E.2d 767, 772 (1954). *See Taylor v. Parks*, 254 N.C. 266, 271, 118 S.E.2d 779, 782 (1961); *Scallon v. Hooper*, 49 N.C. App. 113, 117, 270 S.E.2d 496, 499 (1980), *disc. review denied*, 301 N.C. 722, 276 S.E.2d 284 (1981) ("the plain and obvious purpose of G.S. 20-71.1 . . . is to enable plaintiff to submit a *prima facie* case of agency to the jury which it can decide to accept or reject"). However, the *prima facie* showing of agency under the statute only permits, and does not compel, a finding for plaintiff on the issue of agency. *DeArmon v. B. Mears Corp.*, 312 N.C. 749, 325 S.E.2d 223 (1985); *Chappell v. Dean*, 258 N.C. 412, 128 S.E.2d 830 (1963).

Defendants Greene and TGF contend that plaintiff's *prima facie* showing of agency pursuant to the statute was overcome in this case, and that summary judgment was appropriate on this issue because of "clear and convincing evidence" that the agency relationship between Greene and Ray had been terminated. Citing *DeArmon*, 312 N.C. 749, 325 S.E.2d 223, and *Kidd v. Early*, 289 N.C. 343, 222 S.E.2d 392 (1976), defendants assert the trial court could determine issues of credibility at the summary judgment stage and "concluded that Ray's affidavit could not be believed." We reject their argument.

In *DeArmon*, the Supreme Court essentially agreed with the decision reached in this Court, *DeArmon v. B. Mears Corp.*, 67 N.C. App. 640, 314 S.E.2d 124 (1984), that plaintiff's *prima facie* showing of agency under the statute and defendant's evidence to the contrary created a genuine issue of material fact for the jury on the agency issue. *DeArmon*, 312 N.C. at 759, 325 S.E.2d at 230. *Kidd* holds that courts are entitled to assign credibility as a matter of law to a moving party's affidavit when a party opposing a motion for summary judgment has failed to submit affidavits or other supporting material pursuant to Rule 56(e) or (f) to cast doubts as to the existence of a material fact or upon the credibility of a material witness. *Kidd*, 289 N.C. 343, 222 S.E.2d 392. In this case, however, plaintiff has submitted affidavits pursuant to Rule 56(e), and thus has presented evidence in addition to the *prima facie* showing of agency provided by G.S § 20-71.1. Moreover, as this Court noted in *Burrow v. Westinghouse Electric Corp.*, 88 N.C. App. 347, 363 S.E.2d 215, *disc. review denied*, 322 N.C. 111, 367 S.E.2d 910 (1988), "where matters of the credibility and weight of the evidence exist, summary judgment ordinarily should be denied." *Id.* at 351, 363 S.E.2d at 218 (citation omitted). Defendant Ray's affidavit gives rise to genuine issues of material fact

about whether Greene gave Ray a specific time to return the truck, and whether at the time of the collision Ray was in the course of his duties as Greene's agent. Summary judgment was thus not proper on this issue. *See* N.C. Gen. Stat. § 1A-1, Rule 56(c).

## II.

[2] Plaintiff also alleged that defendants Greene and TGF negligently entrusted the truck to Ray. Negligent entrustment occurs

> when the owner of an automobile "entrusts its operation to a person whom he knows, or by the exercise of due care should have known, to be an incompetent or reckless driver" who is "likely to cause injury to others in its use." As a result of his own negligence, the owner is liable for any resulting injury or damage proximately caused by the borrower's negligence.

*Swicegood v. Cooper*, 341 N.C. 178, 180, 459 S.E.2d 206, 207 (1995) (citations omitted). A plaintiff is not required to show actual knowledge of unfitness, incompetence, or recklessness; the cases require that the owner exercise due care in determining whether the person entrusted with the vehicle is fit. *Id.; Heath v. Kirkman*, 240 N.C. 303, 82 S.E.2d 104 (1954). In *McIlroy v. Motor Lines*, 229 N.C. 509, 50 S.E.2d 530 (1948), cited by defendants, the Supreme Court found that evidence of negligent entrustment was insufficient to go to the jury when an employer performed only a "perfunctory" investigation to determine a person's fitness as a truck driver before hiring him, and failed to discover that the person had previously been convicted of drunkenness and drunken driving. *Id.* However, in that case the Court found as dispositive evidence that, before the accident giving rise to the suit, the employee "drove [the] truck regularly in defendant's service for *eight months*, during which time his conduct was under observation, without evidence of accident or of drinking or addiction to intoxication." *Id.* at 514, 50 S.E.2d at 533 (emphasis added).

The circumstances present here are different, and in this case a jury could find that Greene failed to exercise due care in entrusting the truck to Ray. Clearly one is not required to examine the credentials of every person to whom he entrusts his vehicle; the duty to conduct such an inquiry is dictated by the circumstances and application of the standard of reasonable care. "Issues arising in negligence cases are ordinarily not susceptible of summary adjudication because application of the prudent man test, or any other applicable standard of care, is generally for the jury." *Taylor v. Walker*, 320 N.C. 729, 734, 360

**THOMPSON v. THREE GUYS FURNITURE CO.**

[122 N.C. App. 340 (1996)]

S.E.2d 796, 799 (1987). Viewed in the light most favorable to plaintiff, the evidence in this case shows that Greene entrusted his truck to Ray, a stranger who walked in from the street, without asking to see Ray's driver's license, asking about his driving record, or even inquiring from Ray's references about his character. As a result, Ray, whose license had been permanently revoked for numerous driving violations including driving while impaired, drove defendant TGF's truck while under the influence of alcohol, crossed the center line, and struck Frederick Thompson's automobile, resulting in Thompson's death. We hold this evidence sufficient to create a genuine issue of material fact as to whether defendant Greene, through the exercise of due care, should have known that Ray was an incompetent or reckless driver and that his operation of the truck might likely cause injury to another.

III.

[3] Plaintiff also alleged that defendants violated G.S. § 20-34, which provides:

> No person shall authorize or knowingly permit a motor vehicle owned by him or under his control to be driven by any person who has no legal right to do so or in violation of any of the provisions of this Article.

She contends a violation of the statute is negligence *per se* and is established when it is shown only that defendants "authorized" Ray to drive the truck when he had no license. Defendants, on the other hand, argue that the statute requires that the person charged with its violation must have had knowledge that the driver had no legal right to do so.

As a general rule, " '[w]here a statute contains two clauses which prescribe its applicability, and the clauses are connected by a disjunctive (e.g. "or"), the application of the statute is not limited to cases falling within both clauses, but will apply to cases falling within either of them.' " *Davis v. Granite Corporation*, 259 N.C. 672, 675, 131 S.E.2d 335, 337 (1963) (citations omitted). However, statutes should also be interpreted so as to "avoid absurd or bizarre consequences, the presumption being that the legislature acted in accordance with reason and common sense and did not intend untoward results." *Comr. of Insurance v. Automobile Rate Office*, 294 N.C. 60, 68, 241 S.E.2d 324, 329 (1978). In interpreting G.S. § 20-34, we can decipher no distinction in meaning, nor a reason for one, between the

GLYNN v. PEPCOM INDUSTRIES

[122 N.C. App. 348 (1996)]

words "authorize" and "permit." Indeed, the words as used here are synonymous. *See* American Heritage Dictionary 977 (New College Edition 1981) (defining "permit" as "to authorize"); Black's Law Dictionary 133 (6th ed. 1990); 7A C.J.S. *Authorize* 914 (defining "authorize" in part as "to permit"). To construe the statute as contended by plaintiff would result in the absurd consequence of a court attempting to distinguish whether a person "authorized" or "permitted" a person to use a vehicle. As we read it, G.S. § 20-34 makes it unlawful for one to permit or authorize a motor vehicle owned by him or under his control to be driven by a person when he *knows* the driver (1) has no legal right to do so or (2) is otherwise driving the vehicle in violation of any of the provisions of the Uniform Driver's License Act. Accordingly, we affirm the trial court's grant of summary judgment as to this issue.

The judgment of the trial court is affirmed in part, reversed in part and remanded for trial in accordance with this opinion.

Affirmed in part, reversed in part, and remanded.

Judges EAGLES and MARTIN, Mark D., concur.