DWIGHT V. PEELER v. SOUTHERN RAILWAY COMPANY

No. 7619SC801

(Filed 6 April 1977)

Railroads § 7— crossing accident — contributory negligence of bus driver

    In an action to recover for injuries received when a bus plaintiff was driving collided with the engine of defendant's train at a grade crossing, plaintiff's evidence did not disclose that he was contributorily negligent as a matter of law, but presented such issue for determination by the jury, where it tended to show that the accident occurred at night; plaintiff could see beyond the crossing to the stoplight at the end of the block; plaintiff's bus struck the drawhead or coupling of the engine which extended some four feet into the street on which plaintiff's bus was traveling; there were no lights on the coupling and the engine was black; neither plaintiff nor the passengers on his bus saw the engine or any warning until after the accident; the engine's headlight was on and shining across the street at an angle; there were no flares or flagmen at the crossing and no bells or whistles were sounding; and on other occasions when a train was in the vicinity of the crossing, a warning flare was placed at the crossing.

APPEAL by plaintiff from *Albright, Judge.* Judgment entered 25 May 1976 in Superior Court, ROWAN County. Heard in the Court of Appeals 10 March 1977.

Plaintiff was injured when the bus he was driving collided with the engine of one of defendant's trains in the Town of

Landis. At the close of plaintiff's evidence, the judge granted defendant's motion for directed verdict made under Rule 50. The judge allowed the motion on the ground that plaintiff's evidence disclosed that he was contributorily negligent as a matter of law.

*Finger & Park, by M. Neil Finger, Daniel J. Park and Raymond A. Parker II, for plaintiff appellant.*

*Woodson, Hudson, Busby & Sayers, by Max Busby; Coughenour and Linn, by Stahle Linn and Carl M. Short, Jr., for defendant appellee.*

VAUGHN, Judge.

Contributory negligence is an act or omission by a plaintiff, amounting to a lack of ordinary care, concurring and co-operating with some negligent act or omission on the part of the defendant that makes the act or omission of the plaintiff a proximate cause of the injury complained of. *Adams v. Board of Education,* 248 N.C. 506, 103 S.E. 2d 854. A motion for directed verdict upon the ground of contributory negligence should be allowed only when plaintiff's evidence, considered in the light most favorable to him, together with inferences favorable to him that may be reasonably drawn therefrom, so clearly establishes the defense of contributory negligence that no other conclusion can reasonably be drawn. *Atwood v. Holland,* 267 N.C. 722, 148 S.E. 2d 851.

As we consider the evidence in the case before us, we are reminded that:

"For reasons readily apparent, the Court has encountered difficulty in laying down hard and fast rules governing liability in train-automobile grade crossing accidents. 'Many cases involving injuries due to collision between motor vehicles and trains at grade crossings have found their way to this Court. No good can be obtained from attempting to analyze the close distinctions drawn in the decisions of these cases, for, as was said in *Cole v. Koonce, supra,* 214 N.C. 188, each case must stand upon its own bottom, and be governed by the controlling facts there appearing.' *Hampton v. Hawkins,* 219 N.C. 205, 13 S.E. 2d 227." *Faircloth v. R. R.,* 247 N.C. 190, 193, 100 S.E. 2d 328.

Plaintiff's evidence tends to show the following: At about 10:30 p.m. on the date of the accident, plaintiff was operating a mill bus going south on Main Street. The track of defendant's industrial siding crossed Main Street in a generally northeasterly direction about midway between the intersection of Main Street with West Garden Street and Main Street with West Ryden Avenue. The tracks intersect Main Street at about a 62 degree angle. The street was concrete with asphalt patches. Beside the street there was a strip of black asphalt about 12 feet wide. Plaintiff was looking straight ahead. Visibility was good and plaintiff could see beyond the crossing to the stoplight at the end of the block. The street was clear except that there was a car stopped at the stoplight at the end of the block. That car was facing in plaintiff's direction. Plaintiff saw no lights in the vicinity of the railroad crossing. Just as Plaintiff approached the track, he saw a person off to his right point a flashlight at the ground. That person was a railroad brakeman who, after the wreck, lit a flare. Plaintiff thought the person was a rider and started to apply his brakes. About that time the right front of plaintiff's bus, just below the headlight, struck the drawhead or coupling on the train's engine. Plaintiff never saw the train or any other light until after the impact. Passengers on plaintiff's bus testified that they were looking straight ahead and did not see the train's engine or any warning until the accident. The engine was stopped on the west side of Main Street and was headed east. The drawhead or coupling on the engine is three or four feet long, about two feet thick and about three feet off the ground. The coupling stuck out on Main Street for a distance of four feet. There were no lights on the coupling and the engine was black. Plaintiff was travelling at 25-30 miles per hour. The speed limit on Main Street was 35 miles per hour. There were no flares at the crossing and no flagmen in the roadway. No bells were ringing and no whistles were blowing. An officer who arrived after the accident testified that he saw that the headlight of the train's engine was on and was shining across the street at an angle. Plaintiff had operated the bus for several years. On every other occasion when there had been a train in the vicinity of the crossing, there was always at least one warning flare at the crossing. Other witnesses testified that, in the past, there had always been a flare when the crossing was in use.

Little could be gained by a review of the numerous cases cited that arose out of grade crossing accidents. They all involve

a wide variety of factual situations. The facts in *Jernigan v. R. R. Co.*, 275 N.C. 277, 167 S.E. 2d 269, bear some similarity to those of the case at bar. There were no flares at the crossing although plaintiff had seen one shortly before the accident when the crossing was in use. The train's headlight was burning. Justice Higgins, for the Court, observed, "It is a matter of common knowledge that a locomotive headlight casts an intense but narrow beam far ahead in order that the train crew may spot defects in the rails or obstructions on the roadbed. These lights were many feet above the tracks. Their beams were focused outside the range of plaintiff's view as he approached from the west." *Jernigan v. R. R. Co.*, *supra*, at p. 280.

We conclude that plaintiff should have been allowed to take his case to the jury. That body can resolve all conflicting inferences that arise from the evidence. Plaintiff's evidence, taken in the light most favorable to him, does not so clearly establish the defense of contributory negligence that no other conclusion can reasonably be drawn.

Reversed.

Judges MORRIS and MARTIN concur.