**WINSTON v. BRODIE**

[134 N.C. App. 260 (1999)]

JOHN WINSTON, Plaintiff v. MAURICE ANTONIO BRODIE, LACHELLE WYCHE
AND AUTO RENTAL SYSTEMS, INC., Defendants

No. COA98-592

(Filed 20 July 1999)

**1. Evidence— chiropractor's testimony—injuries to extremities**

The trial court did not err in a personal injury action arising from an automobile accident by allowing a chiropractor to testify concerning injury to plaintiff's bodily extremities. Extremities, including the hand and arm, constitute parts of the body to which nerves radiate from the spine and which are therefore encompassed within the scope of chiropractic medicine.

**2. Evidence— chiropractor's testimony—causation and permanency of injuries**

The trial court did not err in a personal injury action arising from an automobile accident by allowing a chiropractor to testify as to the causation and permanency of plaintiff's injuries.

**3. Agency— leased automobile—personal injury action—liability of lessee for another driver**

The trial court erred by failing to grant defendant Wyche's motion for a directed verdict under N.C.G.S. § 1A-1, Rule 50(a) in a negligence action arising from an automobile accident where Wyche leased a vehicle which was being driven by another (Brodie) when the accident occurred. Although proof of ownership under N.C.G.S. § 20-71.1 creates a prima facie case of agency that permits but does not compel a finding for plaintiff, there was no persuasive evidence or authority supporting classification of a lessee as owner or vicarious owner of the leased vehicle. Moreover, although Wyche has listed Brodie as an additional driver, there was no evidence that she exercised control over his use or operation of the vehicle and no evidence that tended to show that Brodie was acting as Wyche's agent or employee.

**4. Agency— leased autobobile—negligence action—liability of rental agency**

The trial court erred in a personal injury action arising from an automobile accident by denying defendant-Auto Rental's motion for a directed verdict under N.C.G.S. § 1A-1, Rule 50(a) where defendant had stipulated that it owned and had registered a leased vehicle involved in the accident, which prima facie

established agency under N.C.G.S. § 20-71.1(b), but defendant presented positive, contradicting evidence tending to show that it had no agency relationship with the driver. Defendant was entitled to a peremptory instruction that the jury must find for defendant on the agency issue if it believed Auto Rental's evidence.

Appeal by defendants from judgment entered 17 December 1997 by Judge David Q. LaBarre in Wake County Superior Court. Heard in the Court of Appeals 12 January 1999.

*David R. Cockman, for plaintiff-appellee.*

*Alison A. Erca, for defendant-appellant Auto Rental Systems, Inc.*

*Robert E. Ruegger, for defendant-appellant Lachelle Wyche.*

*Vance C. Kinlaw, for North Carolina Board of Chiropractic Examiners, amicus curiae.*

JOHN, Judge.

Defendants Lachelle Wyche (Wyche) and Auto Rental Systems, Inc. (Auto Rental) appeal, contending the trial court erred by allowing certain medical testimony and denying their motions for directed verdict pursuant to N.C.G.S. § 1A-1, Rule 50(a) (1990) (Rule 50(a)). We disagree as to the first contention, but conclude denial of the Rule 50(a) motions constituted error.

Relevant facts and procedural history include the following: On 19 July 1995, Wyche leased a vehicle from Auto Rental and listed Maurice Brodie (Brodie) as an additional driver on the "Rental Agreement for Temporary Substitute Automobile Replacement Only" form. On 19 August 1995, Brodie, unaccompanied by Wyche, was operating the leased vehicle when it collided with an automobile driven by plaintiff John Winston (Winston). Winston, injured in the collision, was treated by Dr. Gregory Baldy (Dr. Baldy), a chiropractor, for neck, back, head, arm, elbow, wrist, hand and finger injuries.

Winston filed suit against Brodie, Auto Rental and Wyche, which action came to trial 15 December 1997 before a jury. At the close of all evidence, Wyche and Auto Rental moved for directed verdict, claiming no grounds existed to hold either vicariously liable for Brodie's negligence. The trial court denied the motions.

Additionally, the court informed the jury in pertinent part that the parties had stipulated in a Pre-trial Conference Order to the following:

E. . . . Wyche rented . . . [an] automobile from Auto Rental and listed Brodie as an additional driver of said vehicle . . . .

. . . .

G. . . . Auto Rental Systems[,] Inc., was the owner of [the] . . . automobile . . . leased to [Wyche] and . . . operated by [Brodie].

H. That the automobile . . . bore . . . registration [named to Auto Rental].

I. Defendants admit that Defendant Brodie was negligent and said negligence was the proximate cause of any damages . . . .

The trial court then related to the jury that

[d]ue to the stipulations . . . the court ha[d] answered the first issue in term of the negligence of one or more of the defendants as "yes" in favor of the plaintiff.

The foregoing determination by the trial court subjected all defendants to liability for Winston's injuries, leaving only the issue of damages for the jury. The issue was framed as follows:

What amount, if any, is the plaintiff, John Winston, entitled to recover for personal injuries from the defendants Maurice Antonio Brodie, Lachelle Wyche, and Auto Rental Systems, Inc.?

The jury returned a verdict awarding plaintiff $32,000.00, and the three defendants thereupon moved jointly to set aside the verdict and for new trial. On 23 December 1997, the trial court denied the motions and entered judgment against defendants jointly and severally. All defendants timely appealed; however, only the appeals of Wyche and Auto Rental (defendants) are presently before us.

[1] Defendants first contend the trial court erred by allowing Dr. Baldy to testify concerning the condition, treatment, causation and permanency of Winston's arm, hand and finger injuries. Dr. Baldy was qualified as an expert in the field of chiropractic medicine and testified he performed chiropractic, orthopedic and neurological examinations when Winston initially presented to him on 11 September 1995. According to Dr. Baldy, he released Winston after three months

of treatment, but the latter returned once in 1996 and four times in 1997 due to injury "flare-ups."

The challenged testimony from Dr. Baldy essentially related to injuries involving Winston's arm, elbow and "muscles that tie into the wrists." Dr. Baldy explained that he examined Winston's arm region to determine "whether the pain in the arms [wa]s coming from the neck region . . . because the spine contains the nerves that go out into the arm." Dr. Baldy also related that Winston had pain in his right hand and a permanent joint injury to one finger. Defendants maintain testimony concerning extremity injuries is beyond the scope of chiropractic as set forth in N.C.G.S. § 90-157.2 (1997). We do not agree.

The statute permits testimony by a doctor of chiropractic as to:

(1) The etiology, diagnosis, prognosis, and disability, including anatomical, neurological, physiological, and pathological considerations within the scope of chiropractic, as defined in G.S. 90-151; and

(2) The physiological dynamics of contiguous spinal structures which can cause neurological disturbances, the chiropractic procedure preparatory to, and complementary to the correction thereof, by an adjustment of the articulations of the vertebral column and other articulations.

G.S. § 90-157.2. Articulation is defined as the "connection of bones or joints." *New Lexicon Illustrated Medical Encyclopedia and Guide to Family Health* 575 (1988).

Chiropractic medicine is the:

science of adjusting the cause of disease by realigning the spine, releasing pressure on nerves radiating from the spine to all parts of the body, and allowing the nerves to carry their full quota of health current (nerve energy) from the brain to all parts of the body.

N.C.G.S. § 90-143(a) (1997).

In *Thomas v. Barnhill*, 102 N.C. App. 551, 403 S.E.2d 102 1991), this Court held testimony regarding the diagnosis, treatment and disability rating of a muscle injury was within the scope of chiropractic medicine under subsection (2) of G.S. § 90-157.2. We observed that

> legislative history suggests . . . the General Assembly intended "to allow chiropractors to testify as to the spinal column and the physical structures that support and/or complement it."

*Thomas,* 102 N.C. App. at 554, 403 S.E.2d at 103 (quoting Minutes of the House Judiciary Committee (June 29, 1989)). This Court has also recognized that certain spinal injuries may cause neurological and muscular complaints affecting the brain, nerves and surrounding muscles, resulting in pain at various sites, including the hand. *See Wooten v. Warren,* 117 N.C. App. 350, 356, 451 S.E.2d 342, 346 (1994).

Based on the foregoing, we hold that extremities, including the hand and arm, constitute parts of the body to which nerves radiate from the spine and which are therefore encompassed within the scope of chiropractic medicine. In addition, bodily extremities are properly considered "physical structures that support and/or complement," *Thomas,* 102 N.C. App. at 554, 403 S.E.2d at 103, functions of the spinal cord based upon nerve and muscle connections central to both, *see generally Wooten,* 117 N.C. App. at 356, 451 S.E.2d at 346 (testimony related to nerve and muscle connections with spinal column within chiropractic expertise). Accordingly, the trial court did not err in allowing Dr. Baldy's testimony concerning injury to Winston's bodily extremities.

[2] Defendants also argue the trial court erred in permitting Dr. Baldy to testify as to the causation and permanency of Winston's injuries. Dr. Baldy expressed the opinion that "based on the history, the examination, and the findings from that examination," Winston's injuries were the "result of that accident on 19 August, 1995" and would require treatment entailing "maybe 20 visits a year." In light of the decisions cited above, suffice it to state Dr. Baldy's testimony concerning the permanency and cause of Winston's injuries was likewise within the scope of G.S. § 90-157.2 and properly allowed for consideration by the jury. *See Thomas,* 102 N.C. App. at 554, 403 S.E.2d at 103 (testimony of chiropractor proper to support jury charge relating to permanency of injury), and *Wooten,* 117 N.C. App. at 356, 451 S.E.2d at 346 (testimony that accident caused muscle injury within scope of chiropractic).

[3] Defendants next attack the trial court's denial of their respective Rule 50(a) motions. Wyche and Auto Rental argue that no basis was provided in the evidence to impute the admitted negligence of Brodie to either. We conclude the trial court erred in denying the motions of both Wyche and Auto Rental.

.

A motion for directed verdict under Rule 50(a) "tests the legal sufficiency of the evidence, considered in the light most favorable to the nonmovant, to take the case to the jury." *Northern Nat'l Life Ins. v. Miller Machine Co.*, 311 N.C. 62, 69, 316 S.E.2d 256, 261 (1984). When the evidence is insufficient to support a verdict in the non-movant's favor, the motion must be granted. *Stanfield v. Tilghman*, 342 N.C. 389, 394, 464 S.E.2d 294, 297 (1995). The grounds in support and opposition of the directed verdict motion must be specifically stated, Rule 50(a), and in reviewing the trial court's ruling, an appellate court will not consider grounds other than those presented to the trial court, *La Grenade v. Gordon*, 60 N.C. App. 650, 653, 299 S.E.2d 809, 811-12 (1983).

Winston responds to defendants' argument by asserting that Wyche, as "vicarious" owner of the leased vehicle, and Auto Rental, the registered owner, were indeed liable for damages resulting from the admitted negligence of Brodie because each expressly allowed Brodie to operate the vehicle. For example, Winston alleged in his complaint:

6) . . . [Auto Rental] was the owner of a . . . vehicle which was being operated by the individual defendant, [Brodie,] and was being driven and used with the permission, authority, consent, and knowledge of the owner of the said vehicle, Auto Rental, and control, express or implied, and was also being operated with the permission, authority, consent and knowledge of Wyche.

. . . .

12) That the defendant, Brodie, was negligent, which negligence is imputed to Auto Rental and Wyche, in that he drove Auto Rental's car into the rear of the automobile plaintiff was driving . . . .

Winston in his pleadings as well as argument at trial thus relied entirely upon the principles enunciated in N.C.G.S. § 20-71.1 (1993), which provides:

(a) In all actions to recover damages for injury to the person or to property . . . arising out of an accident or collision involving a motor vehicle, proof of ownership of such motor vehicle at the time of such accident or collision shall be *prima facie* evidence that said motor vehicle was being operated and used with the authority, consent, and knowledge of the owner in the very transaction out of which said injury or cause of action arose.

(b) Proof of the registration of a motor vehicle in the name of any person, firm, or corporation, shall for the purpose of any such action, be *prima facie* evidence of ownership and that such motor vehicle was then being operated by and under the control of a person for whose conduct the owner was legally responsible, for the owner's benefit, and within the course and scope of his employment.

G.S. § 20-71.1.

The purpose of the section is "to facilitate proof of ownership and agency where a vehicle is operated by one other than the owner." *DeArmon v. B. Mears Corp.*, 312 N.C. 749, 756, 325 S.E.2d 223, 228 (1985). Proof of ownership under G.S. § 20-71.1 creates a *prima facie* case of agency that "permits, but does not compel a finding for plaintiff." *Id.* Essentially, the statute enables plaintiff to "submit a *prima facie* case of agency to the jury which it can decide to accept or reject." *Scallon v. Hooper*, 49 N.C. App. 113, 117, 270 S.E.2d 496, 499 (1980), *disc. review denied*, 306 N.C. 744, 295 S.E.2d 480 (1982).

Once a plaintiff satisfactorily presents an evidentiary showing of agency under G.S. § 20-71.1, the defendant may offer positive, contradicting evidence which, if believed, would establish the absence of an agency relationship. *See DeArmon*, 312 N.C. at 759, 325 S.E.2d at 230. Presentation of such evidence entitles the defendant

to a peremptory instruction that if the jury does believe the contrary evidence, it must find for defendant on the agency issue.

*Id.*

The provisions of G.S. § 20-71.1 constitute a rule of evidence and not substantive law. *Duckworth v. Metcalf*, 268 N.C. 340, 343, 150 S.E.2d 485, 488 (1966). The plaintiff thus continues to carry the burden of proving an agency relationship between the driver and owner at the time of the driver's negligence. *Id.*; *see also Parker v. Underwood*, 239 N.C. 308, 310, 79 S.E.2d 765, 766 (1954) (plaintiff maintains burden of alleging ultimate facts on which to base a cause of actionable negligence). The defendant may choose to present evidence contrary to the plaintiff's *prima facie* showing, but at no point carries the burden of proof. *See DeArmon*, 312 N.C. at 756, 325 S.E.2d at 228.

As to Wyche, Winston argues Brodie's negligence would be imputed to her because as lessee she "vicariously" owned the leased

vehicle and Brodie was acting as her agent pursuant to expressed consent. We do not agree.

Winston presented no persuasive evidence at trial nor argues any authority to this Court supporting classification of Wyche, a lessee, as owner or "vicarious" owner of the leased vehicle. *See Brown v. Ward,* 221 N.C. 344, 347, 20 S.E.2d 324, 326 (1942) (mere "relationship of a lessor and lessee is not that of principal and agent"). Without proof of such ownership, G.S. § 20-71.1 may not be applied. *See Freeman v. Biggers Brothers, Inc.,* 260 N.C. 300, 302, 132 S.E.2d 626, 628 (1963) (absent evidence to support allegation defendant was owner of vehicle, plaintiff not entitled to benefit of G.S. § 20-71.1).

Although Wyche listed Brodie as an additional driver on the lease agreement, there was no evidence she exercised control over his use or operation of the vehicle. *See DeArmon,* 312 N.C. at 753, 325 S.E.2d at 226-27 (bailor "not responsible to third parties for the bailee's negligent use . . . where all control of the equipment has been relinquished to the bailee"). Indeed, it is uncontradicted in the record that Wyche gratuitously loaned the vehicle to Brodie and was not accompanying him when the collision occurred. *See Bramlett v. Overnite Transport,* 102 N.C. App. 77, 82, 401 S.E.2d 410, 413, *disc. review denied,* 329 N.C. 266, 407 S.E.2d 830 (1991) (bailor who gratuitously loaned equipment to bailee not liable for bailee's negligent use of bailed equipment over which bailee had sole custody and control). Finally, no evidence tended to show Brodie was acting as Wyche's agent or employee, but rather that Brodie was using the vehicle for his own purposes at the time in question. The trial court therefore erred by failing to grant Wyche's Rule 50(a) motion for directed verdict, and this matter must be remanded with the directive that such order be entered.

**[4]** Auto Rental on the other hand stipulated in the Pre-Trial Conference Order that it owned and had registered the leased vehicle in its name. Such evidence *prima facie* established agency under G.S. § 20-71.1(b), entitling Winston to present argument to the jury that Auto Rental was responsible for Brodie's negligence. *See* G.S. § 20-71.1(a)&(b) (proof of ownership is *prima facie* evidence vehicle was being operated with authority and consent of owner so as to hold latter responsible for driver's conduct during operation thereof).

Nonetheless, in response to the *prima facie* showing in consequence of Auto Rental's stipulations, the latter presented positive,

contradicting evidence tending to show it had no agency relationship with Brodie. Auto Rental claimed Brodie was not its employee, that it had no control over Brodie's use or operation of the vehicle, and that Brodie had sole custody of the vehicle at the time of the collision. Our Supreme Court has observed that "the operator of a [leased vehicle] is not thereafter the agent of the owner if . . . the owner relinquishes all right to control the [vehicle's] operation." *DeArmon*, 312 N.C. at 753, 325 S.E.2d at 227.

In addition, Auto Rental's lease with Wyche explicitly provided that the "[r]enter or the driver of [the] vehicle shall in no event be deemed the agent or employee of Auto Rental Systems, Inc., in any manner or for any purpose." As pointed out in *DeArmon*, lease terms expressly relinquishing control over a leased vehicle may be considered in determining whether the operator was the agent of the owner-lessor. *Id.* at 754, 325 S.E.2d at 227; *see Peterson v. Trucking Co.*, 248 N.C. 439, 442-43, 103 S.E.2d 479, 481-82 (1958) (lease terms giving lessee all control and financial responsibility over leased tractor indicated lessee was not agent of lessor). Auto Rental's evidence, if believed by the jury, thus tended to establish that Brodie was not its agent at the time of the collision.

Following Winston's *prima facie* showing under G.S. § 20-71.1 and Auto Rental's presentation of contrary evidence, Auto Rental was entitled to a peremptory instruction that if the jury "believe[d] the contrary evidence, it must find for [Auto Rental] on the agency issue." *DeArmon*, 312 N.C. at 759, 325 S.E.2d at 230. However, the trial court not only failed to give such an instruction, but withdrew the issue of agency from the jury when it informed the jury the court had decided the first issue and that the sole remaining issue was that of damages. By its own accord, the trial court held Auto Rental liable for Brodie's negligence based upon the Pre-Trial Stipulation Order, which did not resolve, but rather reiterated argument, on the issue of agency. In doing so, the trial court erred and Auto Rental is entitled to a new trial.

Reversed and remanded for entry of directed verdict as to defendant Wyche; new trial as to defendant Auto Rental.

Judges GREENE and HUNTER concur.