IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-548

No. COA21-653

Filed 16 August 2022

Durham County, No. 15 CVS 2972

LISA BIGGS, Individually and as Administrator, ESTATE OF KELWIN BIGGS,
Plaintiffs,

v.

DARYL BROOKS, NATHANIEL BROOKS, SR., KYLE OLLIS, Individually, and
BOULEVARD PRE-OWNED, INC., Defendants.

Appeal by plaintiff from order entered 4 May 2017 by Judge W. Osmond Smith,
III, in Durham County Superior Court. Heard in the Court of Appeals 27 April 2022.

*Couch & Associates, PC, by Finesse G. Couch and C. Destine A. Couch, for
plaintiff-appellant.*

*Sue, Anderson & Bordman, LLP, by Stephanie W. Anderson, for defendants-
appellees.*

DIETZ, Judge.

¶ 1    In January 2015, Boulevard Pre-Owned, Inc., a used car business, sold a 1995
Camaro to Nathaniel Brooks. Nathaniel Brooks and Boulevard executed a bill of sale;
signed and notarized title transfer forms; and executed various other documents
typically accompanying the sale of an automobile, such as insurance and registration
paperwork. After executing this paperwork, an adult relative of Nathaniel Brooks,
Daryl Brooks, arrived at the dealership and drove the Camaro off the lot.

¶ 2    Shortly after the sale, the North Carolina Division of Motor Vehicles rejected the title transfer paperwork because Boulevard had misplaced its copy of Nathaniel Brooks's driver's license. Boulevard tried unsuccessfully to contact Nathaniel Brooks multiple times between January and March 2015 to obtain a replacement copy.

¶ 3    Later in March 2015, Daryl Brooks was driving the Camaro while impaired and caused a serious automobile accident that led to the death of Kelwin Biggs.

¶ 4    Lisa Biggs, individually and as the representative of Kelwin Biggs, brought claims for negligence and negligent entrustment against Boulevard and its owner, Kyle Ollis. Biggs relied on a statute, N.C. Gen. Stat. § 20-71.1, providing that proof of ownership of a motor vehicle—in this case the title and registration that had not yet been transferred to Nathaniel Brooks—was *prima facie* evidence that the motor vehicle was being operated with the authority, consent, and knowledge of Boulevard, the owner, and "being operated by and under the control of a person for whose conduct the owner was legally responsible."

¶ 5    The trial court granted summary judgment for Boulevard and Ollis on these negligence claims. Following entry of final judgment against other parties in the case, Biggs appealed.

¶ 6    We affirm. As explained below, Boulevard and Ollis presented undisputed evidence that Boulevard relinquished authority and control over the Camaro when it completed the sale and released the Camaro to the buyer. Under controlling

precedent from this Court, because Biggs did not forecast any evidence that rebutted Boulevard's evidence and created a genuine issue of material fact on this issue, Boulevard and Ollis were entitled to judgment as a matter of law on these negligence claims. We therefore affirm the trial court's summary judgment order.

**Facts and Procedural History**

¶ 7    Defendant Boulevard Pre-Owned, Inc. is a used car dealership. Defendant Kyle Ollis is the president and owner of Boulevard.

¶ 8    In January 2015, Boulevard sold a used 1995 Chevrolet Camaro to Nathaniel Brooks. At the time of the sale, the parties executed a bill of sale; signed and notarized reassignment of title paperwork on the form required by the North Carolina Division of Motor Vehicles; and signed various other paperwork typically accompanying an automobile sale such as an arbitration agreement governing the sale, and insurance and vehicle registration paperwork.

¶ 9    Following the sale, Daryl Brooks—who is an adult, younger relative of Nathaniel Brooks according to the record—arrived at the dealership and picked up the Camaro.

¶ 10    Although the parties undisputedly intended to transfer title of the Camaro as part of this sale, that transfer did not happen. When Boulevard submitted the title transfer paperwork to the Division of Motor Vehicles, Boulevard misplaced its copy of Nathaniel Brooks's driver's license, and the DMV rejected the title transfer for

insufficient documentation. From late January through early March, Boulevard called Nathaniel Brooks eight times seeking a replacement copy of his driver's license but never heard back.

¶ 11   Two months after the sale, on 11 March 2015, Daryl Brooks was driving the Camaro. He was impaired at the time. At a speed of approximately 80 miles per hour, Brooks collided with the back of a vehicle occupied by Lisa and Kelwin Biggs. The crash pushed the Biggs's vehicle into oncoming traffic and Kelwin Biggs suffered fatal injuries.

¶ 12   At the time of the collision, Daryl Brooks was driving with a suspended license due to earlier offenses of driving while impaired, driving while license revoked, and failure to appear.

¶ 13   As part of the crash investigation, the State notified Boulevard that a vehicle still titled and registered with the company had been involved in an accident. The DMV's License and Theft Bureau later investigated and cited Boulevard for failure to timely deliver title as part of the sale.

¶ 14   After obtaining a copy of Nathaniel Brooks's driver's license, DMV ultimately transferred title of the Camaro to Nathaniel Brooks in late April 2015, long after the collision involving the Camaro.

¶ 15   Lisa Biggs, individually and as representative of her husband's estate, sued Boulevard and its owner, Kyle Ollis, for negligence, negligent entrustment, emotional

distress, gross negligence, and punitive damages. Biggs also brought claims against both Daryl Brooks and Nathaniel Brooks.

¶ 16    At summary judgment, the trial court dismissed all claims against Boulevard and Ollis. Biggs sought to immediately appeal that ruling, but this Court dismissed that interlocutory appeal for lack of jurisdiction. *Biggs v. Brooks*, 261 N.C. App. 773, 818 S.E.2d 643 (2018) (unpublished).

¶ 17    The case against the remaining defendants was stayed repeatedly over the next several years because of Daryl Brooks's pending criminal trial. In 2017, Brooks was convicted and sentenced for second degree murder and other related offenses in connection with the crash.

¶ 18    Following exhaustion of the criminal appeal process, the civil case against Daryl Brooks proceeded to trial. After the trial court entered judgment finding Daryl Brooks liable for wrongful death in causing the fatal collision, the court conducted a bench trial on compensatory and punitive damages and awarded $10,000,000 in damages.

¶ 19    In June 2021, following entry of final judgment on all remaining claims in this case, Biggs appealed the trial court's May 2017 order granting summary judgment in favor of Boulevard and Kyle Ollis.

**Analysis**

¶ 20    Biggs challenges the trial court's order granting summary judgment in favor

of Defendants Boulevard Pre-Owned, Inc. and Kyle Ollis. We review that order *de novo*. *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008).

¶ 21　　Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." N.C. R. Civ. P. 56(c). To survive a motion for summary judgment, the non-movant must forecast sufficient evidence to create a genuine issue of material fact on all essential elements of the asserted claims. *Waddle v. Sparks*, 331 N.C. 73, 82, 414 S.E.2d 22, 27 (1992).

## I.　Agency theory of liability

¶ 22　　We begin by addressing the various negligence claims that depend on an agency relationship between Daryl Brooks and Boulevard Pre-Owned, Inc.

¶ 23　　Biggs asserts that Boulevard is liable for Daryl Brooks's negligence under an agency theory that stems from a statutory provision governing ownership of motor vehicles. By law, proof of ownership of a motor vehicle at the time of a collision is *prima facie* evidence that the motor vehicle was being operated with the authority, consent, and knowledge of the owner and "being operated by and under the control of a person for whose conduct the owner was legally responsible":

> (a) In all actions to recover damages for injury to the person or to property or for the death of a person, arising out of an accident or collision involving a motor vehicle, proof of

ownership of such motor vehicle at the time of such accident or collision shall be prima facie evidence that said motor vehicle was being operated and used with the authority, consent, and knowledge of the owner in the very transaction out of which said injury or cause of action arose.

(b) Proof of the registration of a motor vehicle in the name of any person, firm, or corporation, shall for the purpose of any such action, be prima facie evidence of ownership and that such motor vehicle was then being operated by and under the control of a person for whose conduct the owner was legally responsible, for the owner's benefit, and within the course and scope of his employment.

N.C. Gen. Stat. § 20-71.1.

¶ 24 "The purpose of the section is to facilitate proof of ownership and agency where a vehicle is operated by one other than the owner." *Winston v. Brodie*, 134 N.C. App. 260, 266, 517 S.E.2d 203, 207 (1999). Proof of ownership under Section 20-71.1 "creates a *prima facie* case of agency that permits, but does not compel a finding for plaintiff." *Id*. Importantly, Section 20-71.1 is "a rule of evidence and not substantive law." *Id*. This means that the plaintiff "continues to carry the burden of proving an agency relationship between the driver and owner at the time of the driver's negligence." *Id*. The defendant "at no point carries the burden of proof." *Id*.

¶ 25 As a result, when a plaintiff relies on proof of ownership through this statute, "the defendant may offer positive, contradicting evidence which, if believed, would establish the absence of an agency relationship." *Id*. This contradictory evidence

entitles the defendant to "a peremptory instruction that if the jury does believe the contrary evidence, it must find for defendant on the agency issue." *Id.* In other words, when the defendant presents evidence contradicting this statutory agency principle, the "statutory presumption is not weighed against defendant's evidence by the trier of facts." *DeArmon v. B. Mears Corp.*, 312 N.C. 749, 756, 325 S.E.2d 223, 228 (1985). Instead, the plaintiff must present affirmative evidence supporting the agency theory. *Id.*

¶ 26 This, in turn, means that, at the summary judgment stage, when a defendant forecasts undisputed evidence that rebuts the agency relationship described by Section 20-71.1, the plaintiff must forecast at least some evidence, beyond the statute itself, that creates a genuine issue of material fact on this question. *See Thompson v. Three Guys Furniture Co.*, 122 N.C. App. 340, 345, 469 S.E.2d 583, 586 (1996). The plaintiff cannot rely solely on the statute in the face of undisputed counter-evidence, because the statutory provision alone cannot be weighed against competing evidence at trial. *DeArmon*, 312 N.C. at 756, 325 S.E.2d at 228.

¶ 27 So, for example, in *Thompson*, this Court held that summary judgment for the defendant was inappropriate after the defendant presented evidence refuting an agency relationship because "plaintiff has submitted affidavits pursuant to Rule 56(e), and thus has presented evidence *in addition to* the *prima facie* showing of agency provided by G.S. § 20–71.1." *Thompson*, 122 N.C. App. at 345, 469 S.E.2d at

586 (emphasis added). Without that affidavit, raising credibility questions with defendant's own evidence, the statute alone would have been insufficient to survive summary judgment. *Id.*

¶ 28   Here, the unique facts of this case make it one of the rare cases where there are no genuine issues of fact, and thus the trial court properly entered summary judgment in favor of the defendants. It is undisputed that, on 8 January 2015, Nathaniel Brooks and Boulevard Pre-Owned, Inc. signed various documents collectively representing the sale and intended transfer of ownership of the Camaro from Boulevard to Nathaniel Brooks. These included a bill of sale for a total purchase price of $7,500 signed by both Brooks and Boulevard; a dealer's reassignment of title on the form issued by the North Carolina Division of Motor Vehicles, signed and notarized by both Brooks and Boulevard; vehicle registration information necessary to register the vehicle in Brooks's name; and various other fully executed paperwork that often accompanies the purchase of an automobile, such as an arbitration agreement concerning the sale transaction, and various loan and insurance paperwork.

¶ 29   Boulevard and Kyle Ollis also submitted an affidavit from Ollis describing the sale of the Camaro to Nathaniel Brooks on 8 January 2015 and testifying that Daryl Brooks had no connection to Boulevard and was not an employee or agent of Boulevard at any time.

¶ 30    This undisputed evidence demonstrates, as a matter of law, that there was no agency relationship between Boulevard and Daryl Brooks. Although the formal transfer of title to the Camaro did not occur because Boulevard misplaced its copy of Nathaniel Brooks's driver's license—and thus was unable to complete the title transfer through the DMV—Boulevard relinquished authority and control over the Camaro when it completed the sale and released the Camaro to the buyer. Accordingly, the trial court properly entered summary judgment in favor of Boulevard and Ollis on all claims that depended on the agency theory of liability.[1]

## II.    Negligent entrustment theory

¶ 31    We next examine the negligent entrustment claim. Biggs contends that she forecast sufficient evidence of the direct negligence of Boulevard based on the company's negligent entrustment of the Camaro to Daryl Brooks, who had a suspended license and a history of driving while impaired.

¶ 32    "Negligent entrustment occurs when the owner of an automobile entrusts its operation to a person whom he knows, or by the exercise of due care should have

---

[1] Biggs also argues that under "North Carolina General Statutes § 20-279.21(b)(2), the owner of the vehicle is liable for the negligent conduct of the driver where the victim's damages were 'caused by an accident and resulting from the ownership, maintenance or use of' the owner's vehicle."

Section 20-279.21 is not a liability provision; it is an insurance coverage provision. Biggs did not raise this insurance coverage issue in the trial court and cannot assert it for the first time on appeal. N.C. R. App. P. 10. We therefore reject this argument as unpreserved.

known, to be an incompetent or reckless driver who is likely to cause injury to others in its use." *Thompson*, 122 N.C. App. at 346, 469 S.E.2d at 586–87.

¶ 33        There are two fatal flaws with this negligent entrustment theory. First, as explained above, undisputed evidence demonstrates that Boulevard relinquished authority and control over the Camaro when it completed the sale and title transfer paperwork on 8 January 2015, and that Daryl Brooks, when he drove the Camaro off Boulevard's lot, was doing so on behalf of his relative, Nathaniel Brooks, who was the buyer of the Camaro and now had authority and control over the vehicle. Thus, the undisputed evidence demonstrates that it was not Boulevard who entrusted Daryl Brooks with the use of the Camaro at that time, but instead Nathaniel Brooks, who had recently purchased the vehicle.

¶ 34        Moreover, the collision at issue in this case did not occur when Daryl Brooks drove the Camaro off Boulevard's lot following the sale. It occurred more than two months later, on 11 March 2015. There is no evidence in the record that Boulevard entrusted Daryl Brooks with the use of the Camaro—over which it relinquished authority and control two months earlier—at the time of the collision. Accordingly, the trial court did not err in granting summary judgment in favor of Boulevard and Ollis on the negligent entrustment claim as well.

### III.   Remaining claims, legal theories, and requests for damages

¶ 35        Having determined that the trial court properly entered summary judgment

in favor of Boulevard and Ollis on all of Biggs's negligence and negligent entrustment claims, we need not address Biggs's other arguments on appeal—including issues of piercing the corporate veil and the award of costs—because these issues necessarily depended on rejection of the trial court's summary judgment ruling on the negligence claims. We therefore affirm the trial court's order in its entirety.

## Conclusion

We affirm the trial court's order.

AFFIRMED.

Judges GRIFFIN and JACKSON concur.